IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Genesis Press, Inc. and<br>Genesis Publications, LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>Hartford Casualty Insurance Company,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br>(Jury Trial)<br><br>C.A. No.: 6:08-2115-HMH |

Plaintiffs, Genesis Press, Inc. and Genesis Publications, LLC (collectively "Genesis"), by and through their attorneys, complaining of the Defendant herein, would allege and show unto the Court as follows:

1. Plaintiff Genesis Press, Inc. is a corporation organized and existing pursuant to the laws of the State of Florida, having its principal place of business in the State of South Carolina and authorized to do business in the State of South Carolina.

2. Plaintiff Genesis Publications, LLC is a limited liability company organized and existing pursuant to the laws of the State of Florida, having its principal place of business in the State of South Carolina.

3. Defendant Hartford Casualty Insurance Company ("Hartford") is a corporation organized and existing pursuant to the laws of the State of Indiana having its principal place of business in the State of Connecticut. Hartford is authorized to sell insurance in the State of South Carolina by the South Carolina Department of Insurance and does sell insurance and transact business in the State of South Carolina.

4.	Jurisdiction in this Court is proper by virtue of the diversity of the parties and the fact that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

5.	Hartford issued a policy of commercial property insurance to Genesis Press, Inc. and Genesis Publications, LLC, bearing policy number 22 SBQ UD8194, with a policy period of February 1, 2008 to February 1, 2009 ("the Policy").

6.	Subject to the terms and conditions of the Policy, the Policy provides coverage for property located at 7112 Augusta Road, Piedmont, South Carolina.  This location is listed as Location 001 and Building 001 in the Policy's Declarations.

7.	Subject to the terms and conditions of the Policy, the Policy provides coverage for replacement cost of the building at Location 001 with a limit of liability of $11,006,840.

8.	Subject to the terms and conditions of the Policy, the Policy provides coverage for replacement cost of the business personal property at Location 001 with a limit of liability of $3,150,000.

9.	Subject to the terms and conditions of the Gross Earnings Endorsement which is a part of the Policy, the Policy provides coverage for loss of gross earnings of Genesis with a limit of liability of $7,500,000.

10.	Subject to the terms and conditions of the Blanket Coverage Limit of Insurance in the Stretch Xpand for Printers Endorsement ("the Printers Endorsement") which is a part of the Policy, the Policy provides coverage for accounts receivable, computers and media, debris removal, personal property of others and valuable papers and records, to be apportioned as Genesis desires, with a limit of liability of $150,000.

11. Subject to the terms and conditions of the Policy, the Policy provides for coverage for reasonable expenses incurred by Genesis at Hartford's request to assist Hartford in its investigation and determination of the amount of Genesis's loss with a limit of liability of $5,000.

12. The Policy provides coverage for all risks of direct physical loss to covered property, business personal property, gross earnings (under the Gross Earnings Endorsement) and blanket coverage for accounts receivable, computers and media, debris removal, personal property of others and valuable papers and records (under the Printers Endorsement) unless the loss is excluded or limited by the Policy.

13. Loss caused by fire is not an excluded or limited loss under the terms and conditions of the Policy and, as such, is covered under the Policy.

14. Genesis paid a premium to Hartford in the amount of $30,091.00 for the coverages provided in the Policy.

15. On March 29, 2008, a fire occurred at 7112 Augusta Road, Piedmont, South Carolina, identified as Location 001 and Building 001 in the Policy's declarations. This fire caused damages which are covered under the terms of the Policy.

16. The fire caused significant damage to Genesis's plant, equipment, stock and inventory. As a result, Genesis was unable conduct any business for approximately a week and, as of the date of this filing, has still not been able to fully resume operations.

17. The fire loss was timely reported to Hartford.

18. Hartford assigned an adjuster to the claim, Michael Spetz, who conducted an investigation into the fire loss. Genesis has timely supplied all information requested by Hartford.

19. By letter dated April 1, 2008, Mr. Spetz forwarded a Sworn Statement in Proof of Loss to Genesis. Mr. Spetz advised Genesis in the letter that South Carolina insurance regulations required Hartford to send an insured this form within 20 days from the date of the loss. However, Mr. Spetz advised Genesis that it did not need to complete the form at that time. Further, he advised Genesis that Hartford would complete the form after it had determined Genesis's loss.

20. With regard to the Sworn Statement in Proof of Loss, the Policy provides as follows:

> **Duties In The Event Of Loss Or Damage**
>
> You must see that the following are done in the event of loss of or damage to Covered Property:
>
> * * * *
>
> h.   Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

21. On May 14, 2008, Genesis provided a partial Sworn Statement in Proof of Loss to Hartford. Hartford did not assist Genesis with the preparation of the partial Sworn Statement in Proof of Loss.

22. On April 2, 2008, Mr. Spetz made a personal inspection of the fire loss scene and met with Genesis's officers and certain employees. During that inspection, Mr. Spetz authorized the condemnation of Genesis's inventory and stock. Mr. Spetz also told Genesis's officers to retain skilled employees, such as the Mitsubishi pressman and binder/folder operators, even though there was no work for them to do until the presses were replaced in order to avoid business interruption and to mitigate damages. Mr. Spetz advised that the costs to retain these

employees would be covered by the Policy. Finally, Mr. Spetz advised that costs incurred in outsourcing customers' business to other printers until restoration of the presses would be covered by the Policy.

23. Mr. Spetz also inspected two Mitsubishi presses which were damaged in the fire during his visit of April 2, 2008. Following his inspection and an inspection by Hartford's consultants, LWG, he advised Genesis that the Policy provided full replacement cost coverage for the presses.

24. On April 8, 2008, Mr. Spetz authored a letter to Genesis authorizing the removal of two damaged Mitsubishi color presses from Genesis's facility. Mr. Spetz advised in the letter that the presses would be moved to a local storage facility, Eastern Distribution, until Hartford could determine whether the presses could be salvaged.

25. On April 10, 2008, Hartford issued a check in the amount of $600,000 to Genesis. In a letter from Mr. Spetz accompanying the check, he explained that the check represented an advance and partial payment for damages presented by Genesis. In an email to Genesis of the same date, Mr. Spetz advised that the check was to be applied to the business personal property limit, but that Genesis could use the funds for whatever purpose it needed. Nowhere in either correspondence did he indicate that additional funds due under the Policy would not be timely forthcoming.

26. On April 11, 2008, Mr. Spetz, by email, authorized Mitsubishi Lithographics Presses ("MLP") to remove the Mitsubishi presses from Genesis and move them into storage.

27. By invoice dated April 16, 2008, MLP billed Genesis $56,680 for derigging the presses and moving them into storage. However, Hartford has failed to make payment directly to MLP and has failed to issue insurance proceeds to Genesis for payment of the MLP invoice.

5

28.  Upon information and belief, Hartford sold or otherwise disposed of the damaged Mitsubishi presses. Upon information and belief, Hartford had not obtained title to the presses when they were sold or otherwise disposed of.

29.  The Mitsubishi presses are subject to a financing lien held by MAC Funding Corporation ("MAC") which also held title to the presses. MAC's financing lien for the presses exceeds $2,500,000. Upon information and belief, although MAC has made numerous attempts to secure payment of its lien interest by Hartford, Hartford has not responded to MAC's requests for information.

30.  Upon information and belief, despite repeated requests for payment, Hartford has failed to make payment to MAC for its interest in the presses. Likewise, despite repeated requests for payment, Hartford has failed to make any payment to Genesis for the salvage value of the presses, Genesis's equity in the presses or their replacement cost.

31.  Genesis owns a Heidleberg 4-Color GTO Press which was damaged in the fire. Although Genesis has obtained an estimate for repair of the Heidleberg Press in the amount of $9,000 and tendered it to Hartford, Hartford has failed to make payment for the repair.

32.  Hartford retained LWG Consulting to investigate and make recommendations regarding the replacement of Genesis's print management system software. By email dated April 10, 2008, LWG authorized Genesis to procure replacement print management system software with Pace Systems Group, Inc. ("Pace") to minimize Genesis's business interruption.

33.  By invoice dated April 30, 2008, Pace billed Genesis $151,865 for the purchase of the new print management system software recommended by LWG. However, Hartford has failed to make payment directly to Pace and has failed to issue insurance proceeds to Genesis for payment of the Pace invoice.

34. On March 31, 2008, with Hartford's authorization and at its direction, Genesis contracted with NDS of Virginia, Inc. ("NDS") for provision of restoration clean up services and equipment rental for removal of debris from the fire loss. Mr. Spetz negotiated the price and scope of work to be performed by NDS and approved said work.

35. By invoice dated April 9, 2008, NDS billed Genesis $200,000 for restoration clean up services and equipment rental necessary to remove debris from the fire loss. However, Hartford has failed to make payment directly to NDS and has failed to issue insurance proceeds to Genesis for payment of the NDS invoice.

36. On March 31, 2008, with Hartford's authorization and at its direction, Genesis contracted with Blue Moon Enterprises d/b/a ServPro of South Greenville County ("ServPro") for cleaning and restoration services resulting from the fire loss. Mr. Spetz negotiated the price and scope of work to be performed by ServePro and approved said work.

37. By invoice dated April 16, 2008, ServPro billed Genesis $123,053.77 for cleaning and restoration services necessitated by the fire loss. However, Hartford has failed to make payment directly to ServPro and has failed to issue insurance proceeds to Genesis for payment of the ServPro invoice.

38. Other vendors who supplied services or sold equipment to Genesis through authorization from Hartford and at its direction have not been paid by Hartford, and Hartford has failed to issue insurance proceeds to Genesis for payment of their invoices.

39. As a result of the fire loss, Genesis lost stock, works in progress, inventory and other business personal property. The cost to replace such property exceeds two million dollars.

40. As a result of the fire loss, Genesis lost the Mitsubishi presses, the replacement cost of which exceeds three million dollars. Further, the time for delivery of such presses will exceed several weeks, a fact made known to Hartford.

41. As a result of the fire loss, Genesis was forced to shut down its operations until the debris from the fire could be removed. As soon as its facility could be made ready, it resumed operations in a limited capacity. For the period of time it took Genesis to clean and restore its facility, it suffered a business interruption loss and incurred extra expenses in an effort to outsource projects for its clients. In addition, it had to turn away business it could no longer service because of the loss of its presses, equipment and stock.

42. Further, Genesis has made deposits for replacement of the presses in an amount exceeding $30,000 in reliance on Hartford's promise to cover the replacement cost of the presses. However, because Hartford has failed to pay the benefits owed to Genesis under the Policy, Genesis has lost and will continue to lose substantial business and revenue until the presses are replaced.

43. Since the time of the loss, Genesis has made repeated requests to Hartford for payment of the benefits due under the Policy. Despite having presented Hartford with all the information it has requested in connection with its investigation, Hartford has failed to make payment of benefits in full and refused any further advances or payment of vendor invoices.

44. Since the time of the loss, Genesis's officers and representatives have repeatedly called and emailed Mr. Spetz in an effort to obtain information about the status of the claim and when Hartford will make a decision about further payment of benefits under the Policy. Genesis has further advised Hartford that it will be forced to close its operations if it cannot obtain

payment of benefits under the Policy, or at least advances on the Policy's benefits, to allow it to continue operations. However, these communications have been ignored.

45. Since the time of the loss, Genesis has requested from Hartford a copy of the Policy, copies of recorded interviews of Genesis employees, documents reflecting payment of any vendor invoices, and documents reflecting the disposal of Genesis's presses, inventory and stock. Hartford has failed to respond to these repeated requests and has failed to provide any of the information requested.

46. Since the time of the loss, Genesis has been forced to turn away business, outsources business, cut employee hours and payroll, and has lost business opportunities. These losses are the direct result of Hartford's continued delay in paying Genesis the benefits it is due under the Policy.

### FOR A FIRST CAUSE OF ACTION
#### Breach of Contract

47. Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

48. The Policy described herein constituted a valid and binding contract of insurance in force and effect on March 29, 2008.

49. The Policy requires Harford to pay benefits due under the Policy to Genesis for losses covered by the Policy, subject to the Policy's terms and conditions.

50. The fire loss suffered by Genesis on March 29, 2008 is a loss covered by the Policy.

51. Genesis has performed all conditions precedent to making a claim under the Policy.

52. Hartford has breached the Policy in the following particulars:

    a. in failing to make payment for direct physical loss of and physical damage to covered property caused by the fire;

    b. in failing to make payment for expenses to remove debris of covered property caused by the fire loss;

    c. in failing to make payment for damage to accounts receivable, computers and media, debris removal, personal property of others, valuable papers and records, and brands and labels caused by the fire loss;

    d. in failing to make payment for expenses incurred by Genesis at Hartford's request to assist it in the investigation of the claim and the determination of the amount of loss;

    e. in failing to make payment for damage to personal effects owned by Genesis's officers and employees caused by the fire loss;

    f. in failing to make payment for the actual loss of "Business Income" Genesis is sustaining and the actual, necessary and reasonable "Extra Expenses" it is incurring due to the necessary interruption of its business operations caused by the fire loss; and

    g. in failing to perform any other obligation owed to Genesis under the Policy as a result of the fire loss claim which may be discovered during litigation or which occurs prior to resolution of this action.

53. Hartford's breach of the Policy has resulted in damages sustained by Genesis in the form of expenses for the repair of its equipment and plant, replacement costs for equipment and machinery, replacement costs for business personal property, stock, inventory and work-in-progress, expenses for assistance in the claims process, expenses from vendors hired to assist with debris removal, adjustment, repair and replacement of property, replacement costs for personal effects owned by Genesis's officers and employees, business income loss and extra expenses sustained by Genesis during a reasonable period of restoration of the business, and other actual and consequential damages which may be discovered or occur after the date of this filing.

## FOR A SECOND CAUSE OF ACTION
### Bad Faith

54. Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

55. The Policy constitutes a valid and mutually binding contract of insurance between Genesis and Hartford.

56. Genesis is due benefits for the fire loss under the terms and conditions of the Policy.

57. Hartford has refused and/or unreasonably delayed and continues to refuse and/or unreasonably delay payment of benefits to Genesis.

58. Despite Hartford's knowledge of Genesis' need for payment of benefits in order to continue its operations, Hartford has refused and/or unreasonably delayed and continues to refuse and/or unreasonably delay payment of advances on benefits due to Genesis.

59. Hartford has unreasonably refused and continues to unreasonably refuse to acknowledge and act promptly on claims communications made by Genesis's officers and agents.

60. Hartford has failed and continues to fail to promptly investigate Genesis's claim.

61. Hartford misrepresented the Policy to Genesis with respect to the requirement of a Sworn Statement of Proof of Loss.

62. Hartford has unreasonably refused and continues to unreasonably refuse to provide a copy of the Policy and other documentary information to which Genesis is entitled.

63. Hartford has unreasonably refused and continues to unreasonably refuse to affirm or deny coverage after receipt of Genesis's proof of loss statement.

11

64. Hartford has compelled Genesis to file suit to obtain a timely adjustment of its fire loss claim.

65. Hartford has acted and continues to act unreasonably or in bad faith in breach of the implied covenant of good faith and fair dealing arising in the Policy.

66. Hartford's conduct as outlined above has resulted in actual damages to Genesis in the amount of benefits due to Genesis under the Policy.

67. Hartford's conduct as outlined above has resulted in and continues to result in actual damages to Genesis in loss of customers, loss of business income, extra expenses, loss of business opportunities and loss of business reputation and industry goodwill resulting from Genesis's limited operating capacity beyond a reasonable period of business restoration and other actual and consequential damages.

68. Hartford's conduct as outlined above was and continues to be willful or in reckless disregard of Genesis's rights under the Policy, thus entitling Genesis to punitive damages as well as actual damages in an amount to be determined by the jury.

## FOR A THIRD CAUSE OF ACTION
### Promissory Estoppel

69. Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

70. Hartford's adjuster specifically represented to Genesis's officers that the Policy covered and would pay for Genesis's expenses in retaining skilled employees until its business was fully operational.

71.     Hartford's adjuster specifically represented to Genesis's officers that the Policy covered and would pay for Genesis's costs in outsourcing customers' business to other printers in order to maintain the customers until its business was fully operational.

72.     Hartford's adjuster specifically represented to Genesis's officers that the Policy covered and would pay for Genesis's replacement costs for the Mitsubishi presses.

73.     Hartford's adjuster specifically represented to Genesis's officers that Hartford would pay for the vendors it authorized to perform services related to the fire loss.

74.     Genesis has and continues to incur costs in reliance on these representations.

75.     Despite Hartford's promises of coverage and payment for these costs under the Policy, it has refused and continues to refuse payment.

76.     Genesis was ignorant as to the truth of these representations and entitled to rely upon them.

77.     Genesis has incurred actual damages caused by Hartford's representation in the continuing expenses associated with the retention of skilled employees, the outsourcing of business, the loss of its presses and debts owed to vendors and Hartford should be estopped from denying coverage as to these expenses.

## FOR A FOURTH CAUSE OF ACTION
### Conversion – Mitsubishi Presses

78.     Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

79.     Upon information and belief, Hartford or its agent obtained possession of the Mitsubishi presses and sold or otherwise disposed of the presses. Further, upon information and belief, Hartford did not have title to the presses when they were obtained, sold or disposed of.

80. MAC held title to the Mitsubishi presses and Genesis had an equity interest in them pursuant to a lease agreement.

81. Genesis did not authorize Hartford to sell or otherwise dispose of the Mitsubishi presses or retain the proceeds for its own use and benefit.

82. Upon information and belief, MAC held title to the Mitsubishi presses and did not authorize Hartford to sell or otherwise dispose of the Mitsubishi presses.

83. Hartford has not returned the presses to either Genesis or MAC and, if the presses were sold, has not remitted the proceeds from the sale to either Genesis or MAC.

84. Hartford continues to exercise rights of ownership of the Mitsubishi presses, or their sales proceeds, to the alteration of their condition and to the exclusion of the rights of Genesis and MAC resulting in actual damages to Genesis in the amount of its equity interest in the Mitsubishi presses.

85. Hartford's conversion of the Mitsubishi presses is willful, reckless and/or committed with conscious indifference to the rights of Genesis such that Genesis is entitled to punitive damages in addition to an award of actual damages.

**FOR A FIFTH CAUSE OF ACTION**
**Conversion – Inventory**

86. Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

87. Hartford or its agent obtained possession of Genesis's paper inventory and sold it for salvage value following the fire loss.

88. Genesis's paper inventory was subject to a lien held by Carolina First Bank.

89. Hartford has neither returned the paper inventory to Genesis nor remitted the proceeds from the sale to Genesis and Carolina First Bank.

90. Hartford continues to exercise rights of ownership of Genesis's paper inventory to the alteration of its condition and to the exclusion of the rights of Genesis and Carolina First Bank resulting in actual damages to Genesis in the amount of its equity interest in the paper inventory.

91. Hartford's conversion of the paper inventory is willful, reckless and/or committed with conscious indifference to the rights of Genesis such that Genesis is entitled to punitive damages in addition to an award of actual damages.

## FOR A SIXTH CAUSE OF ACTION
### Attorneys' Fees

92. Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

93. Hartford's failure to pay benefits due to Genesis under the Policy is unreasonable or in bad faith.

94. Pursuant to S.C. Code Ann. § 38-59-40, Genesis is entitled to reasonable attorneys' fees in connection with the prosecution of this action.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a. Enter judgment against the Defendant in an amount to be determined for actual, special, incidental and consequential damages;

b. Enter judgment against the Defendant in an amount to be determined for punitive damages;

c. Award attorneys' fees and costs to the Plaintiffs; and

      d.      Award such other and further relief as this Court deems just and proper.

                                                  s/Phillip E. Reeves
                                                  Phillip E. Reeves (Fed. Bar No. 3232)
                                                  Jennifer D. Eubanks (Fed. Bar No. 6137)
                                                  GALLIVAN, WHITE & BOYD, P.A.
                                                  55 Beattie Place, Ste. 1200
                                                  P.O. Box 10589
                                                  Greenville, South Carolina  29603
                                                  (864) 271-9580

Greenville, South Carolina                  Attorneys for Plaintiffs,
June 4, 2008                                       Genesis Press, Inc. and
                                                  Genesis Publications, LLC