**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| GENESIS PRESS, INC., AND<br>GENESIS PUBLICATIONS, LLC, | ) ) ) | |
|       Plaintiffs, Counter-Defendants<br>      and Third-Party Defendants | ) ) ) | |
|  v. | ) ) | |
| MAC FUNDING CORPORATION, | ) ) | C.A. No. 6:08-cv-02115-HMH |
|       Intervenor Plaintiff, Third-Party<br>      Plaintiff, and Third-Party<br>      Counter-Defendant | ) ) ) ) | |
|  v. | ) ) | |
| CAROLINA FIRST BANK, | ) ) | |
|       Intervenor Plaintiff and<br>      Counter-Defendant | ) ) ) | |
|  v. | ) ) | |
| HARTFORD CASUALTY INSURANCE<br>COMPANY, | ) ) ) | |
|       First- and Third-Party Defendant and<br>      Counter-Plaintiff. | ) ) ) | |

## FIRST AMENDED COMPLAINT OF MAC FUNDING CORPORATION

Intervenor/Third Party Plaintiff, MAC Funding Corporation ("MAC"), by and through its

attorneys, complaining of the Plaintiffs/Third-Party Defendants, Genesis Press, Inc. ("Genesis

Press") and Genesis Publications, LLC ("Genesis Publications"), and First- and Third-Party

Defendant Hartford Casualty Company ("Hartford"), would allege and show unto the Court as

follows:

## THE PARTIES

1.      Intervenor/Third-Party Plaintiff MAC is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Wood Dale, Illinois.

2.       Third-Party Defendant, Genesis Press, is a corporation incorporated under the laws of the State of Florida, having its principal place of business in the State of South Carolina.

3.      Third-Party Defendant, Genesis Publications, is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business in the State of South Carolina.

4.      First- and Third-Party Defendant Hartford is a corporation organized and existing under the laws of the State of Indiana, having its principal place of business in the State of Connecticut.  Hartford is authorized to sell insurance in the State of South Carolina by the South Carolina Department of Insurance and does sell insurance and conduct business within the State of South Carolina.

5.      The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000 and is between citizens of diverse states.  Venue is proper pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### *The Genesis Entities procure Insurance from Hartford via BBT-CIC.*

6.      On or about June 4, 2008, the Genesis Entities filed a Complaint ("First-Party Complaint") in this Court, C.A. No.: 6:08-2155-HMH, against its insurer Hartford.

7.      The Genesis Entities aver in their First Cause of Action that Hartford breached a policy of commercial property insurance issued by Hartford to the Genesis Entities (Policy No. 22 SBQ UD8194) ("Policy").  The Declaration Sheet for the Policy states that it is in effect from

February 1, 2008 to February 1, 2009. This Policy was the second insurance policy issued by Hartford to the Genesis Entities, and followed the policy which was in effect the prior policy year of February 1, 2007 to February 1, 2008. The Genesis Entities allege that Hartford breached the Policy by not paying benefits due to the Genesis Entities for covered losses resulting from a fire (the "Fire") that occurred at the facility for Genesis Press located at 7112 Augusta Road, Piedmont, South Carolina ("the Genesis Facility") on or about March 29, 2008.  The Fire caused significant damage to the Genesis Facility, its plant, equipment, stock and inventory, including but not limited to two Mitsubishi printing presses leased by MAC to the Genesis Entities ("Press No. 1 and "Press No. 2", together referred to as "the Presses"). MAC's rights and interests in the Presses were duly secured by MAC with UCC-1 financing statements.

8.     Through a series of meetings in person, over the phone, and by e-mail occurring during the latter part of 2006 and early 2007, the Genesis Entities made their insurance needs known to BB&T-CIC Insurance Services, Inc., now known as BB&T Insurance Services, Inc. ("BBT-CIC"). Specifically, the Genesis Entities indentified the secured parties and/or mortgages on its assets, including but not limited to the secured parties holding secured interests in various equipment used and operated by Genesis Press.  BBT-CIC was informed of the Presses, that the Presses were being financed by MAC,that MAC would need a certificate of insurance evidencing coverage for the Presses, and would need to have a loss payee status under any insurance policy which BBT-CIC would procure on behalf of the Genesis Entities.  BBT-CIC understood the insurance needs of the Genesis Entities with regard to the Presses and agreed to procure insurance for the Genesis Entities, making it apparent to the Genesis Entities that BBT-CIC had the authority to bind Hartford to insurance coverage for the Genesis Entities by its

words and deeds, including but not limited to its acceptance of insurance applications from the Genesis Entities.

9.      The Genesis Entities operated their printing business in Florida prior to the relocation of their printing operations to Piedmont, South Carolina in approximately the spring to early summer 2007.

10.     BBT-CIC procured for and on behalf of the Genesis Entities two separate insurance policies from Hartford: the first policy had an inception date of February 1, 2007, and the second February 1, 2008 to February 1, 2009.

11.     Neither BBT-CIC nor Hartford ever provided complete copies of either of the two insurance policies to the Genesis Entities. Instead, the Genesis Entities only received copies of policy 'binders', which consisted only of summaries of various policy provisions. These policy binders did not include any of the insurance policy endorsements, which normally would be attached to an insurance policy. The Genesis Entities did not receive a complete copy of the 2008 Policy until after the Fire. The Policy was sent by Hartford in response to a letter from the attorney for the Genesis Entities.

12.     BBT-CIC was also delinquent in having Hartford add the various secured creditors and mortgagees of the Genesis Entities as additional interests under the two Hartford policies. Such secured creditors and mortgagers were added by Hartford to the two policies via endorsements to its insurance policies with the Genesis Entities in a piecemeal fashion as "Loss Payees" and/or "Additional Insureds".

13.     Hartford retroactively issued at least two loss payee endorsements to its 2007 policy with the Genesis Entities, making the coverage set forth and reflected in the endorsements

effective upon the inception date of the 2007-2008 policy, rather than on the date that Hartford issued the endorsements.

### *The Terms of Hartford's Commercial Property Policy.*

14.    The various terms and conditions of the Policy provide coverage for the Genesis Facility with a limit of liability of $11,006,840 for replacement of the building comprising all or a part of the Genesis Facility.

15.    The Policy also provides coverage for replacement costs of the business personal property at the Genesis Facility with a limit of liability of $3,150,000.

16.    The Policy provides coverage for all risks of direct physical loss to covered property, business personal property, and gross earnings and blanket coverage for accounts receivable, computers, media, debris, removal, and personal property of others, unless the loss is excluded or limited by the Policy.

17.    Importantly, a loss caused by fire is not excluded or otherwise limited under the terms and conditions of the Policy, and is therefore a covered loss under the Policy.

### *MAC's Status as Loss Payee under the Hartford Policy*

18.    On April 8, 2008, through an endorsement to the Policy issued by Hartford, MAC was designated as a "Loss Payee" under the Policy. This endorsement states that MAC is a Loss Payee for Leased Equipment for "Property" located at "Location 001" and "Building 001".  A true and correct copy of this endorsement is attached hereto as Exhibit 1. Hartford issued the Loss Payee endorsement for MAC after BBT-CIC had, on April 1, 2008, issued a Certificate of Insurance to MAC evidencing that MAC was a Loss Payee under the Hartford Policy. A true and correct copy of this certificate of insurance is attached hereto as Exhibit 2.

19.    The loss payee endorsement issued by Hartford showed an "effective date" of

April 8, 2008, while the certificate of insurance issued by BBT-CIC on April 1st only showed an effective date corresponding to the inception date of the 2008 Policy of February 1, 2008. The Evidence of Insurance issued by BBT-CIC also on April 1, 2008 only refers to the Policy's inception date of February 1, 2008.  A true and correct copy of this Evidence of Property Insurance is attached hereto as Exhibit 3.

> ### *Definition and Categories of "Lender's Loss Payable" under the Hartford Policy.*

20.     A "Lender's Loss Payee" is defined within another endorsement to the Policy captioned as "The Loss Payable Endorsement."  The "Lender's Loss Payable Endorsement" states that a "Loss Payee" is a "creditor (including a mortgage holder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as: (a) Warehouse receipts; (b) A contract for deed; (c) Bills of lading; or (d) Financing statements."  Exhibit 4.

21.     As to "Covered Property" in which the Loss Payee has insurable interests, Hartford is obligated to "pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear."  Exhibit 4 at para. B.2.a.  The Loss Payable Endorsement further provides that "the Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for [sic] similar action on the Covered Property." *Id.*, at para. B.2.b. Finally the Loss Payee "will still have the right to receive loss payment"  "[i]f we deny your claim because of your acts or because you have failed to comply with the terms of this policy." *Id.* at para. B.2.c.

22.     The Loss Payable Endorsement additionally states that Hartford has the option to "pay to the Loss Payee the whole principal on the debt plus any accrued interest."  *Id.*, at para. B.2.d.  The Loss Payable Endorsement, however, is silent on how an entity may be added to the

policy as a loss payee, or what date the entity would be entitled to receive the loss payment it is otherwise entitled to receive as specified within the Loss Payee Endorsement.

### *Hartford's Investigation of the Loss at the Genesis Facility.*

23.     On or about April 2, 2008, Hartford's claims adjuster Michael Spetz inspected the Genesis Facility and met with Genesis Press's officers and several employees. Upon information and belief, during that inspection Mr. Spetz authorized the condemnation of Genesis Press' inventory and stock, including the Presses, which had been damaged in the Fire.

24.     Mr. Spetz inspected the Presses during his visit on April 2, 2008, and, following his inspection and an inspection by Hartford's consultants, he advised the Genesis Entities that the Policy provided full replacement cost coverage for the Presses.

25.     Approximately two weeks after the Fire, in e-mail correspondence with Hartford's 'home office' dated April 16, 2008, Mr. Spetz acknowledged that while MAC was 'not listed on our policy. . . now that we do know that they are the loss payee we would list them on any payments we make related to the presses if/when we make a payment. . . . They may require a letter from us indicating that when we do make a payment related to the presses that we will name them on the check. I need to respond to them and their attorney."

26.     In each of the five "Property Large Loss Reporting Forms", status reports prepared by Mr. Spetz during the claims adjustment process, only MAC and Carolina First Bank were identified as loss payees under the Hartford Policy with the Genesis Entities.

27.     Mr. Spetz acknowledged during his deposition testimony that Hartford's claims manual allows for Hartford to perform 'policy reformation,' or 'ex gratia,' whereby the policy is reformed during the claims process because a particular coverage was left off the policy due to an error. Spetz further acknowledged that reformation was not performed in this situation by

Hartford because no one from Hartford ever contacted BBT-CIC to see if some coverage was mistakenly left off the policy which should have been included. Mr. Spetz also admitted that MAC would be classified as a lender loss payee under the terms of the Policy, since MAC had secured interests in the Presses.

### The Genesis Entities' Claims against Hartford.

28.     Not until September 25, 2008 did Hartford deny the Genesis Entities claim under the 2008 Hartford Policy. In addition to claiming that Hartford breached the Policy, the Genesis Entities allege in the Second Cause of Action of their First-Party Complaint that the actions of Hartford constitute a bad faith refusal and/or unreasonable delay in providing coverage under the Policy.

29.     In their Third Cause of Action, the Genesis Entities allege that Hartford should be estopped from denying coverage to the Genesis Entities because of the various promises made by Hartford that coverage would be provided under the Policy.

30.     In their Fourth Cause of Action, the Genesis Entities allege a cause of action for Hartford's conversion of the Presses. The Genesis Entities aver that MAC holds title to the Presses and that the Genesis Entities have an equity interest in each of the Presses pursuant to the lease agreements between Genesis Press and MAC. The Genesis Entities further allege that Hartford has obtained possession of the Presses in spite of Hartford's having no legal right to possess and maintain the Presses.

31.     In their Fifth Cause of Action, the Genesis Entities allege a cause of action for conversion of their inventory.

32.     The Genesis Entities allege in their Sixth Cause of Action a right to attorneys' fees pursuant to S.C. Code § 38-59-40.

### *Lease No. 1 between MAC and Genesis Press for Press No. 1.*

33.     More than three years prior to the Fire at the Genesis Facility, on or about December 15, 2004, Genesis Press and MAC entered into Equipment Lease Agreement No. SUL 0214 ("Lease No. 1"), whereby MAC leased Press No. 1 to Genesis Press.  At the inception of Lease No. 1, Press No. 1 was a new Mitsubishi Diamond Six Color Sheetfed Printing Press. Related auxiliary equipment and accessories were also made part of Lease No. 1 and described therein.  A true and correct copy of Lease No. 1 is attached hereto as Exhibit 5.

34.     The Terms of Rental for Lease No. 1 provide that Genesis Press would make eighty-four (84) monthly payments to MAC of $23,700 each, with an advance rental payment of $32,000.

35.     Paragraph 5 of Lease No. 1 provides in pertinent part that the payment obligations of Genesis Press are "IRREVOCABLE, ABSOLUTE AND UNCONDITIONAL, AND WILL NOT BE SUBJECT TO ANY ABATEMENT, DEFENSE, SETOFF, COUNTERCLAIM, OR RECOUPMENT WHATSOEVER FOR ANY REASON (INCLUDING, BUT NOT LIMITED TO, ANY INABILITY TO USE OR OPERATE, OR ANY LIMITATION ON THE USE OR OPERATION OF, THE EQUIPMENT)."

36.     Paragraph 12 of Lease No. 1 further provides that, in the event of any loss or damage to Press No. 1, Genesis Press has the obligation, at MAC's option, to pay MAC the full purchase price for Press No. 1, as well as any other amounts payable to MAC pursuant to Lease No. 1.  Paragraph 12 of Lease No. 1 further provides that, "[t]he total or partial destruction of the Equipment, or total or partial loss of use or possession thereof to Lessee, shall not relieve Lessee from the duty to pay rent as herein provided."

37.     Paragraph 13 of Lease No. 1 further provides that Genesis Press has the

obligation to, "at its sole expense . . . keep the Equipment insured at all times against risk of loss or damage from any cause whatsoever in an amount equal to the full undepreciated replacement value (new) of the Equipment at Lessor's option." Paragraph 13 additionally states that Genesis Press is obligated to designate MAC as a "loss payee" or "additional party insured" on each of Genesis Press' insurance policies.  Further, "any proceeds of insurance payable as a result of loss or damage to the Equipment will be applied to Lessee's obligations hereunder . . . [and] [a]ny excess or remaining proceeds shall be the property of Lessor."

38.    The Genesis Entities made known to BBT-CIC that MAC was a loss payee under their insurance policy when Genesis Press was located in Florida prior to its move to South Carolina. A fax from the Genesis Entities' Florida insurance producer was delivered to BBT-CIC in approximately December 2006, which listed all of the Genesis Entities prior additional insureds/loss payees, including but not limited to MAC for Press No. 1, pursuant to Lease No. 1.

39.    Paragraph 13 of Lease No. 1 provides that, "in the event of any default hereunder by Lessee, Lessee irrevocably appoints Lessor as Lessee's attorney [i]n fact to make claim for, receive payment of, and execute and endorse all documents, checks, or drafts received in payment for loss or damage under any insurance policy."

40.    Paragraph 15 of Lease No. 1 defines the events and/or conditions that would constitute a default by Genesis Press, providing in pertinent part that a default occurs if (a) Lessee fails to pay any rent due within five (5) days of its due date; (b) the Equipment is seized or there is a "parting with possession or control of the Equipment," or "(c) Lessee's failure to perform any obligation under any other agreement between Lessor and Lessee, whether or not related to this Lease."

41.    Paragraph 18 of Lease No. 1 states that, "[i]n the event this Lease is deemed to be

a security interest or lease in the nature of a security agreement, Lessee hereby grants to Lessor and Lessor hereby retains a continuing purchase money security interest in the Equipment, together with any and all proceeds (as presently or hereafter defined by the Uniform Commercial Code ('UCC')) of the Equipment. . . ."  Additionally, Paragraph 18 provides that, "Lessee shall join with Lessor in executing/authenticating one or more financing statements and other documents, to the extent required by the UCC in a form satisfactory to Lessor to evidence Lessor's interest in the Equipment." Finally, Paragraph 18 states that, "[i]n the event Lessee shall be in default under this Lease, Lessor, in addition to any remedies hereunder, shall have the remedies of a secured party under the UCC."

### *MAC's Security Agreement with Genesis Press.*

42.      Thereafter, on or about May 4, 2005, Genesis Press and MAC entered into a security agreement ("Security Agreement") whereby Genesis Press granted to MAC continuing security interests in, *inter alia,* Genesis Press's accounts, goods, machinery and equipment, cash and non-cash proceeds and all other instruments, documents and securities ("Collateral").   The purpose of the Security Agreement was "to secure any and all Indebtedness . . . whatsoever owing from [Genesis Press] to [MAC] from time to time and the prompt full and faithful performance by [Genesis Press] of any and all provisions" under the Security Agreement. Further, the Security Agreement defined "[i]ndebtedness" as "any and all indebtedness, financial obligations and payments due and owing" under Lease No. 1, as well as "all other obligations and liabilities of [Genesis Press], whether now existing or hereafter incurred or created."  A true and correct copy of the Security Agreement is attached hereto as Exhibit 6.

43.      Paragraph 2.2 of the Security Agreement provides that Genesis Press "shall at its sole cost and expense . . .  keep and maintain the Collateral insured for its full insurable value

against loss or damage by fire . . . and all other hazards and risks ordinarily insured against by other owners or users of such properties. . . ." Paragraph 2.2 further states that Genesis Press "shall deliver to [MAC] the original (or certified copy) of each policy of insurance, or certificate of insurance and evidence of payment of all premiums for each such policy. Such policies of insurance shall contain an endorsement, in form and substance acceptable to [MAC], showing loss payable to [MAC] and provide that all such insurance companies will give [MAC] at least 30 days prior written notice before any such policies of insurance shall be altered or canceled and that no act or default of [Genesis Press] or any other person shall affect the right of [MAC] to recover under such policy or policies of insurance in case of any loss or damage."

44. The Security Agreement further provides that a default shall occur if Genesis Press (a) "fails or neglects to perform . . . any term . . . contained in this Agreement, the Lease or any other agreements with [MAC]. . . . (c) if [Genesis Press] fails to pay any of the Indebtedness to [MAC], when due and payable or declared due and payable . . . (d) if the Collateral is . . . seized . . . or comes within the possession of any receiver, trustee, custodian, or assignee . . . ."

45. Paragraph 3.3 of the Security Agreement provides that, upon an event of default, MAC, "in its sole and absolute discretion, may: (a) declare any and all Indebtedness secured . . . immediately due and payable . . . (b) exercise any one or more of the rights and remedies accruing to a secured party, and enforce this Agreement and the security interest granted herein under the Uniform Commercial Code."

46. Pursuant to the terms of Lease No. 1 and the Security Agreement, on February 11, 2005, MAC duly filed UCC Financing Statement No. 200508961201 with the Florida Secured Transaction Registry covering Press No. 1. On May 9, 2005, MAC filed UCC Financing Statement No. 200509638978 and UCC Financing Statement No. 20050963896X covering all

personal property of the Genesis Entities, "whether now existing and/or hereafter arising and/or acquired . . . ."  True and correct copies of these UCC Financing Statements are attached hereto as Group Exhibit No. 7.

### *Lease No. 2 between MAC and Genesis Press for Press No. 2.*

47.     On or about December 27, 2006, Genesis Press and MAC entered into Equipment Lease Agreement No. SUL 0231 ("Lease No. 2"), whereby MAC leased Press No. 2 to Genesis Press.  Press No. 2 is described in Lease No. 2 as a new Mitsubishi 4 (Four) Color Sheetfed Printing Press.  Related auxiliary equipment for Press No. 2 is further described and made a part of Lease No. 2.  A true and correct copy of Lease No. 2 is attached hereto as Exhibit 8.

48.     The Terms of Rental for Lease No. 2 provide that Genesis Press would make ninety-six (96) monthly payments to MAC of $19,400 each for Press No. 2.  The Terms and Conditions of Lease No. 2 are substantially similar to, if not the same, as those contained within Lease No. 1.

49.     Paragraph 13 of Lease No. 2 also provides that Genesis Press has the obligation to, "at its sole expense . . . keep the Equipment insured at all times against risk of loss or damage from any cause whatsoever in an amount equal to the full undepreciated replacement value (new) of the Equipment at Lessor's option."  Paragraph 13 additionally states that Genesis Press is obligated to designate MAC as a "loss payee" or "additional party insured" on each of Genesis Press' insurance policies.  Further, "any proceeds of insurance payable as a result of loss or damage to the Equipment will be applied to Lessee's obligations hereunder . . . [and] [a]ny excess or remaining proceeds shall be the property of Lessor."

50.     In the latter part of 2006 and/or early 2007, the Genesis Entities made known to BBT-CIC that Press No. 2 would be delivered to its facilities in South Carolina in 2007, and

instructed BBT-CIC to have MAC named as a loss payee under the Hartford Policy with the Genesis Entities. BBT-CIC informed the Genesis Entities that it would be providing Evidence of Property Insurance to the Genesis Entities which would show coverage for the Press No. 2, which was being sent to South Carolina.   Genesis Press Chief Financial Officer Bruce Kudeviz requested that BBT-CIC provide proof of insurance after having received a series of phone calls from MAC's account representative Maury Qualls in, approximately, December 2006.

51.     Pursuant to the Terms and Conditions of Lease No. 2, MAC duly filed UCC Financing Statement No. 200704750366 with the Florida Secured Transaction Registry covering Press No. 2 on or about February 6, 2007.  A true and correct copy of this UCC Financing Statement is attached hereto as Exhibit 9.

52.     Genesis Press has failed to make rental payments to MAC as required by Lease No. 1 and Lease No. 2.

53.     Pursuant to paragraph 3.1 of the Security Agreement, Genesis Press's failure to make payments to MAC as required by Lease No. 1 and Lease No. 2 is an event constituting a default entitling MAC to the remedies prescribed by paragraph 3.3 of the Security Agreement, as well as those afforded to a secured party by the UCC, or otherwise allowed by law.

54.     As a result of the default by Genesis Press under Lease No. 1 and Lease No. 2, there is now due and owing from Genesis Press to MAC under Lease Nos. 1 and 2 the total sum of approximately $3,100,000, plus interest, late charges, attorneys' fees, court costs and other costs and expenses as provided in Lease No. 1 and Lease No. 2 and in the Security Agreement.

55.     Hartford has refused MAC's demand for the insurance coverage that it is entitled to under the Policy as a Loss Payee. Hartford has also failed to reform its Policy with the Genesis Entities to make MAC a Loss Payee on the inception date of the 2008 Policy, in spite of

having identified MAC as a loss payee during the claims adjustment process immediately after

the March 29, 2008 Fire, in spite of the knowledge of BBT-CIC, who had the apparent authority

to bind Hartford with insurance coverage, and in spite of and contrary to BBT-CIC's issuance of

the unrestricted Certificate of Insurance and Evidence of Insurance issued by BBT-CIC to MAC

during the initial stage of the adjustment process, which showed insurance for MAC as of the

2008 Policy inception date.

### FOR A FIRST CAUSE OF ACTION
### Declaratory Judgment against Hartford, Genesis Press and Genesis Publications.

56.     MAC repeats, realleges, and incorporates each and every allegation contained in

paragraphs 1-55 as if repeated herein.

57.     There is a current case or controversy within the purview of 28 U.S.C. § 2201

concerning whether the Policy provides coverage to MAC as a "Loss Payee" for the damages to

the Presses.

58.     Hartford has failed to make any payment to MAC for its interests in and to the

Presses. Additionally, Hartford has failed to provide adequate assurances to MAC that Hartford

shall pay the amount of damage/loss to MAC as Loss Payee.

59.     As a result of the fire loss, the value of MAC's remaining security interests in the

Presses has been significantly diminished.

60.     Since the time of the loss, MAC has demanded that Hartford pay MAC for the

benefits due under the Policy as a Loss Payee, but Hartford has failed to make payment of any

benefits to MAC.

61.     MAC is entitled to a declaration that Hartford has a duty to MAC, under the

Policy and the Loss Payable Endorsement, to make payment to MAC, in precedence to any other

party, for damage to the Presses.  In the alternative, MAC is entitled to a declaration of the

respective rights and obligations of all parties to this litigation, pursuant to the Policy, for

payment to Genesis Press, Genesis Publications and MAC for the covered loss.

## FOR A SECOND CAUSE OF ACTION
### Breach of Contract against Hartford

62.     MAC repeats, realleges, and incorporates each and every allegation contained in

paragraphs 1-61 as if repeated herein verbatim.

63.     The Policy and Endorsements thereto described herein constitute a valid and

binding contract of insurance by and between Hartford and MAC.

64.     The Policy requires Hartford to pay benefits due under the Policy and

Endorsements to MAC for losses covered by the Policy, subject to the Policy's terms and

conditions.

65.     The fire loss that occurred on March 29, 2008, at the Genesis Facility is a loss

covered by the Policy.

66.     MAC has performed any existing conditions precedent to making a claim under

the Policy as a Loss Payee.

67.     Hartford has breached the Policy by failing to make payment to MAC for MAC's

covered property damaged by the fire and by failing to perform any other obligation owed to

MAC under the Policy as a result of the fire loss claim which may be discovered during

litigation or which occurs prior to resolution of this action.

## FOR A THIRD CAUSE OF ACTION
### Equitable Lien on Insurance Proceeds against Hartford.

68.     MAC repeats, realleges, and incorporates each and every allegation contained in

paragraphs 1-67 as if repeated herein verbatim.

69.    The Policy was procured by the Genesis Entities to protect their interests as well as MAC's interest in the Presses.  Genesis Press was obligated under Lease No. 1 and Lease No. 2 to keep the Presses "insured at all times against risk of loss or damage from any cause whatsoever in an amount equal to the full undepreciated replacement value (new) of the Equipment at [MAC's] option." Further, Paragraph 2.2 of the Security Agreement provides that Genesis Press "shall at its sole cost and expense . . .  keep and maintain the Collateral insured for its full insurable value against loss or damage by fire. . . .  and all other hazards and risks ordinarily insured against by other owners or users of such properties. . . ."

70.    Accordingly, MAC has an equitable lien on any insurance proceeds under the Policy, to the extent of MAC's interest, which is the remaining unpaid portion of the total amounts payable in respect of the Presses under the payment schedules of Lease No. 1 and Lease No. 2.

71.    Hartford has an obligation, separate and distinct from any obligation that Hartford owes to the Genesis Entities, to preserve the proceeds of the Policy such that MAC's equitable interest in the Presses is protected and satisfied.  Harford has acknowledged MAC's right to such proceeds in its internal written communications.

72.    Hartford's obligation to MAC continues until such time as the competing claims by the Genesis Entities and MAC have been rightfully determined.

73.    Hartford has had imputed knowledge of MAC's equitable interest in the insurance proceeds, through Lease No. 1 and Lease No. 2, and its security interest pursuant to the Security Agreement and the Financing Statements for the Presses duly filed with the Florida Secured

Transaction Registry, since approximately December 2006 via BBT-CIC, who had the apparent authority to bind Harford to insurance coverage through its representations to the Genesis Entities, and otherwise through its actions and deeds.

74.    Because Hartford had timely notice of MAC's equitable claim but has partially satisfied the Genesis Entities' claim without due regard to MAC's interest in the insurance proceeds, MAC can and should rightfully recover such proceeds to the full extent of its equitable lien on the insurance proceeds relative to the Presses.

### FOR A FOURTH CAUSE OF ACTION
**Reformation of the Policy with Hartford.**

75.    MAC repeats, realleges, and incorporates each and every allegation contained in paragraphs 1-74 as if repeated herein verbatim.

76.    The Genesis Entities duly informed BBT-CIC of the two Presses and of MAC's interests as lessor to the Genesis Entities for the Presses. BBT-CIC was further informed by the Genesis Entities that MAC needed to be covered as loss payees under any policy procured by BBT-CIC.

77.    In spite of Hartford's imputed knowledge of MAC's interests through BBT-CIC, who had the apparent authority to bind Hartford for insurance coverage, the two Hartford Policies did not physically list MAC as loss payees prior to the March 29, 2008 Fire. Nevertheless, Hartford's claims adjustment procedures allow for the reformation of an insurance policy if a particular coverage or interest was not initially made part of the insurance policy when issued.

78.    BBT-CIC agreed to obtain the coverage as requested by the Genesis Entities for MAC, however, the insurance policies as issued by Hartford did not identify MAC as loss payees prior to the March 29, 2008 Fire at Genesis Press' facility.

79.    Hartford has declined MAC's demand for the coverage that should have been afforded it under the Policy as a Lender Loss Payee.

80.    BBT-CIC and Hartford never provided complete copies of the two insurance policies which Hartford had issued the Genesis Entities prior to the March 29, 2008 fire. Instead, BBT-CIC and/or Hartford only provided the Genesis Entities with policy binders, which were nothing more than summaries of the various coverage afforded by Hartford to the Genesis Entities, with no endorsements or information pertaining to additional interest under the policies.

81.    The Genesis Entities did not discover the error in the coverage requested, specifically with regard to MAC as loss payees, until after the March 29, 2008 Fire.  Prior to the issuance of the 2008 Policy, however, the Genesis Entities had been informed by BBT-CIC that certificates of insurance showing evidence of insurance for MAC would be sent, and that the insurance the Genesis Entities had requested for MAC, had been arranged for and was in place.

82.    BBT-CIC, the agent for and on behalf of the Genesis Entities, which had the apparent authority to bind Hartford with insurance coverage, and which was entrusted to the task of procuring insurance that would cover the various additional interests of the Genesis Entities, led the Genesis Entities to believe that MAC would be covered as loss payees under the Hartford policies since, at least, December 2006.

83.    Hartford acknowledged MAC's status as a loss payee during the claims adjustment process.

84.    Hartford's adjustment policies and procedures typically allow for the reformation of an insurance policy of a particular interest or coverage had not been provided by the policy through mistake or inadvertence.

85.    Because the Genesis Entities had been led to believe that coverage would be afforded to MAC as loss payee under the Hartford Policies by BBT-CIC, and because Hartford's claims adjustment process allows for reformation of an insurance policy to be made where there has been an error in not affording coverage as represented by an agent and requested by an insured, the 2008 Hartford Policy with Genesis should be reformed such that MAC is classified and listed a loss payee thereunder, and entitled to all protections and benefits as a Loss Payee under said Policy.

### FOR A FIFTH CAUSE OF ACTION
**Estoppel as to Hartford.**

86.    MAC repeats, realleges, and incorporates each and every allegation contained in paragraphs 1-85 as if repeated herein verbatim.

87.    As set forth above,  BBT-CIC made material misrepresentations to the Genesis Entities that a valid commercial insurance policy was in place, with MAC as a loss payee, covering the Genesis Press facility against damage from fire. When BBT-CIC made these misrepresentations, it had the apparent authority to bind and obligate Hartford for the insurance which BBT-CIC represented it had procured and was in place with respect to MAC.

88.    MAC relied upon these material representations to its detriment and reasonably expected to receive coverage that Hartford failed to provide, which BBT-CIC had failed to procure.

89.    Hartford, therefore, is estopped from denying the coverage reasonably relied upon by MAC, that it was a loss payee on the Hartford Policy with the Genesis Entities, and Hartford

is liable for damages suffered by MAC resulting from BBT-CIC's failure to obtain the insurance as it had represented to the Genesis Entities.

### FOR AN ELEVENTH CAUSE OF ACTION
### Breach of Lease No. 1 against Genesis Press

90.    MAC repeats, realleges, and incorporates each and every allegation contained in paragraphs 1-89 as if repeated herein verbatim.

91.    Genesis Press ceased making payments to MAC under the payment schedule of Lease No. 1 for Press No. 1 and is therefore in default of Lease No. 1.  As a consequence of the default, all payments remaining are accelerated and presently due.

92.    Press No. 1 was irreparably damaged in the fire that occurred at the Genesis Facility on March 29, 2008.  Pursuant to paragraph 12 of Lease No. 1, MAC has the option of requiring Genesis Press to pay MAC all amounts remaining under Lease No. 1.  MAC is hereby exercising this option.

93.    Genesis Press is further in default under the terms of Lease No. 1 at paragraph 15 because it has parted with possession and control of Press No. 1.

### FOR A TWELFTH  CAUSE OF ACTION
### Breach of Lease No. 2 against Genesis Press

94.    MAC repeats, realleges, and incorporates each and every allegation contained in paragraphs 1-93 as if repeated herein verbatim.

95.    Genesis Press has not made any payments to MAC under Lease No. 2 for Press No. 2 and is therefore in default of Lease No. 2.

96.    Press No. 2 was irreparably damaged in the fire that occurred at the Genesis Facility on March 29, 2008.  Pursuant to paragraph 12 of Lease No. 2, MAC has the option of requiring

Genesis Press to pay MAC all amounts remaining under Lease No. 2.  MAC is hereby exercising this option.

97.     Genesis Press is further in default under the terms of Lease No. 2 at paragraph 15 because it has parted with possession and control of Press No. 2.

## FOR A THIRTEENTH CAUSE OF ACTION
### Breach of the Security Agreement against Genesis Press

98.     MAC repeats, realleges, and incorporates each and every allegation contained in paragraphs 1-97 as if repeated herein verbatim.

99.     Genesis Press has ceased making payments to MAC under the payment schedule of Lease Nos. 1 for Press No. 1 and has not made any payments under Lease No. 2 for Press No. 2. Because payments have not been made under the terms of Lease Nos. 1 and 2, the Genesis Entities are in default under paragraph 3.1 of the Security Agreement.  Under paragraph 3.3 of the Security Agreement, upon default, MAC has the discretion to declare all indebtedness secured immediately due and payable and is entitled to all remedies afforded to a secured party by the UCC or by law.

100.     MAC hereby exercises its right under paragraph 3.3 of the Security Agreement to demand all amounts due under Lease Nos. 1 and 2 and the Security Agreement immediately payable.

## FOR A FOURTEENTH CAUSE OF ACTION
### Attorneys' Fees against Hartford

101.     MAC repeats, realleges, and incorporates each and every allegation contained in paragraphs 1-100 as if repeated herein verbatim.

102.      Hartford's failure to pay benefits due to MAC under the Policy and its Endorsements is unreasonable and/or in bad faith.

103.     Pursuant to S.C. Code Ann. § 38-59-40, MAC is entitled to reasonable attorneys' fees in connection with the prosecution of this action.

## PRAYER FOR RELIEF

MAC prays for judgment as follows:

A.      A declaratory judgment that First- and Third-Party Defendant Hartford has a duty under the Policy to make payment to MAC as a lender loss payee, in precedence to any other party, for damage to the Presses, or, in the alternative, a declaratory judgment determining the respective rights and obligations of all parties to this litigation, pursuant to the Policy;

B.      A judgment against First- and Third-Party Defendant Hartford in an amount to be determined by a jury and attorneys' fees, and court costs;

C.      A judgment against Third-Party Defendants Genesis Press and Genesis Publications in an amount to be determined by a jury, plus interest, late charges, attorneys' fees, and court costs as provided by the terms of Lease Nos. 1 and 2 and the Security Agreement; and

D.      Such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

s/Marshall Winn
Marshall Winn (529)
David H. Koysza (9893)
WYCHE BURGESS FREEMAN & PARHAM P.A.
Post Office Box 728
Greenville, South Carolina 29602-0728
Telephone:  (864) 242-8200
Facsimile:  (864) 235-8900
Email:  mwinn@wyche.com; dkoysza@wyche.com

Gary D. Santella (pro hac vice)
Anthony J. Bruozas (pro hac vice)
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
203 North LaSalle Street, Suite 2500
Chicago, Illinois 60601
Telephone:  (312) 245-7500
Facsimile:  (312) 245-7467
Email: gsantella@masudafunai.com
Email:  abruozas@masudafunai.com

COUNSEL FOR MAC FUNDING CORPORATION

June 26, 2009
Greenville, South Carolina