IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Genesis Press, Inc. and<br>Genesis Publications, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>MAC Funding Corporation and<br>Carolina First Bank,<br><br>    Intervenor Plaintiffs,<br><br>v.<br><br>Harford Casualty Insurance Company,<br><br>    Defendant. | )<br>) Civil Action No.: 6:08-cv-2115-HMH<br>)<br>)<br>)<br>)<br>) **MEMORANDUM IN SUPPORT OF**<br>)<br>) **MOTION *IN LIMINE* REGARDING**<br>)<br>) **EXPERT TESTIMONY OF DAVID ICOVE**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

The Genesis plaintiffs submit this memorandum in support of their motion *in limine* to exclude the expert testimony of David Icove as to any alleged "motives" Genesis possessed to commit arson on its premises on March 29, 2008. For the reasons stated herein, the motion should be granted.

**FACTS**

David Icove represents that he "is an expert in forensic fire scene analysis and reconstruction." (**Exhibit A**, Icove opinion, p. 1). Icove describes the basis of his retention as an expert is "to perform a forensic fire engineering analysis and evaluation of the initial development of a fire on March 29, 2008, at a commercial printing facility…". (**Exhibit A**, Icove opinion, p. 2). In performing this analysis and evaluation, Icove relies "primarily upon the 2008

1

Edition of the National Fire Protection Association's NFPA 921—Guide for Fire and Explosion Investigations…". (**Exhibit A**, Icove opinion, p. 2).

After conducting his "forensic fire scene analysis and reconstruction", Icove rendered two primary opinions.

> Opinion #1 – The fire investigation conducted by Unified Investigations & Sciences, Inc., Charlotte, North Carolina met the standards of practice for reporting opinions of scientific or technical experts as specified by NFPA 921.

(**Exhibit A**, Icove opinion, p. 2).

> Opinion #2 – For Genesis Press, substantial and scientific evidence supports the occurrence of profit-motivated arson. This opinion is supported by numerous economic and non-economic "red flag" fraud indicators.

(**Exhibit A**, Icove opinion, p. 3). Icove's identification of "red flags" is, essentially, a list of evidentiary factors Icove believes demonstrate Genesis's motive to commit the arson. For example, Icove lists the following as "red flags":

- "Genesis had two prior losses with a one-month loss in 1992 with Hurricane Andrew followed by a larger loss by Hurricane Wilma October 2005." (**Exhibit A**, Icove opinion, p. 24)

- "Genesis has pushed to settle the claim." (**Exhibit A**, Icove opinion, p. 26)

- "The inventory level was higher at the end of year 2007 than in previous years." (**Exhibit A**, Icove opinion, p. 26)

Icove represents that all of his opinions, including those as to motive and "red flags", are given "to a reasonable degree of engineering certainy." (**Exhibit A**, Icove opinion, pp. 3, 30).

**I.     Icove's proposed testimony as to Genesis Press's "motivation" is inadmissible because it invades the province of the jury and thus will not "assist the trier of fact."**

Icove's second opinion as to Genesis' motivation for committing arson and supporting "red flag" testimony does not fall within the scope of testimony permitted of expert witnesses.

2

Rule 702 establishes that expert testimony may be introduced "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue…". Fed. R. Evid. 702. "Faced with a proffer of expert scientific testimony, then, the trial judge must determine … whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-593, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993). See also *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 1175 (1999). Icove's characterization of evidence, under the guise of expert testimony, as "motive" or "red flags" offers no assistance to the jury and thus is inadmissible.

Federal courts have held that expert testimony as to the existence or identification of a party's motivations is not helpful to a jury's deliberations but, to the contrary, invades the province of the jury. "Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony. …'The question of intent is a classic jury question and not one for the experts.'" *In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 547 (S.D.N.Y. 2004) (internal citations omitted). See also *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996)(rev'd on other grounds) ("The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent.").

This was the precise question at issue in the case of *Cincinatti Ins. Co. v. Cochran*, 2005 WL 2179799 (S.D. Ala. 2005) (unpublished) in which the insured offered a psychologist for the purposes of testifying as to the lack of a motive to commit arson. The district court rejected this proposed testimony as improper.

3

> [T]he difficulty is that the jury is in as good a position as Dr. Koch to determine the accuracy of Cochran's statements about his financial health and, assuming it credits his statements, to draw the conclusion that a financially successful businessman lacks the motive to commit arson.

*Id.* at *15. See also *State v. Garcia,* WL 1874535, *6-7 (Ohio App. 8 Dist. 2002) (unpublished) ("These conclusions belong to the jury and only the jury. We agree such testimony improperly invaded the jury's province.")

Here, Icove seeks to "analyze[] the motive for arson as demonstrated by the fire scene indicators, potential indicators not directly related to combustion, and other scientific evidentiary factors." (**Exhibit A**, Icove opinion, p. 2). In so doing, however, Icove impermissibly strays into questions reserved solely for jury consideration.

> Whatever expertise [a proposed witness] may possess, no expert may 'supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence.' Thus, '[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony.'

*Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-470 (S.D.N.Y. 2005) (internal citations omitted).

Icove's opinion as to the Genesis plaintiffs' motives is, in essence, argument resting upon independently verifiable evidence. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *U.S. v. Frazier*, 387 F.3d 1244, 1262 -1263 (11th Cir. 2004), citing 4 *Weinstein's Federal Evidence* § 702.03[2] [a]. Because Icove's opinion is merely argument clothed in a thin veil of analysis, it is not helpful to the jury and is thus inadmissible as expert testimony under Rule 702.

**II.     The science upon which Icove's second opinion is based provides an insufficient basis for his opinion**

Beyond questions of its assistance to the jury, Icove's opinion as to Genesis Press's motivations and "red flags" pertaining thereto is unsupported by a reliable scientific basis. Considering this portion of the *Daubert* analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Daubert* at 592-593, 113 S. Ct. at 2796. Icove's second opinion assigning motives to the Genesis Press arson is inadmissible in that it is grossly speculative and seeks to establish facts beyond that intended by its underlying methodology.

"A reliable expert's opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inference must be derived using scientific or other valid methods." *Free v. Bondo-Mar-Hyde Corp.,* 25 Fed. App'x. 170, 172 (4th Cir. 2002), quoting *Oglesby v. General Motors Corp.,* 190 F.3d 244, 250 (4th Cir.1999). Icove's second opinion—and its underlying "red flags" analysis—engages in rank speculation by attempting to assign "motives" to the Genesis principals via expert testimony. As a result, this proposed testimony does not survive the court's "gate-keeping function" of a *Daubert* review.

It is beyond dispute that "the district court does not abuse its discretion in cutting off examination of a witness where the question would call for a speculative answer. *United States v. Stewart*, 104 F.3d 1377, 1384 (D.C. Cir. 1997), citing *United States v. Thorne,* 997 F.2d 1504, 1513 (D.C.Cir.), *cert. denied,* 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993). This discretion extends to the review of expert testimony.

> [T]he whole point of *Daubert* is that experts can't 'speculate.' They need analytically sound bases for their opinions. District courts must be careful to keep experts within their proper scope, lest

> apparently scientific testimony carry more weight with the jury than it deserves.

*DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). See also *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir.1995) ("[A]dmissible expert opinion requires a foundation based on facts that allow the expert "to express a reasonably accurate conclusion as opposed to conjecture or speculation...."). Federal courts have recognized that concerns of expert speculation apply particularly to opinion testimony of motive. See, e.g., *Gentieu v. Tony Stone Images/Chicago, Inc.*, 214 F. Supp. 2d 849, 851-852 (N.D. Ill. 2002) ("In those respects it must be said that Pickerell's Report reads in large part more like the expected closing argument from Gentieu's counsel than any legitimately admissible opinion testimony. It is rife with speculation about motives—about why certain actions were taken by Getty.") In *DePaepe*, the Seventh Circuit rejected an expert's attempt to opine on General Motors' motives in designing its cars, specifically noting the inherently speculative nature of such testimony.

> Syson lacked any scientific basis for an opinion about the motives of gm's designers. He could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify *as an expert* that GM had a particular motive.

*Id.* at 720 (emphasis in original).

Via expert testimony, Icove attempts to demonstrate suspicion of "profit-motivated arson" at the hands of Genesis and several "red flags" that have led him to that conclusion. Yet the grossly speculative nature of Icove's conclusions is highlighted by the fact that he remains unwilling to state that Genesis actually committed the arson.

```
16     Q.  Okay.  And as I understand it, your
17   opinion is and I guess there is no dispute, this
18   was arson?
19     A.  Yes, sir.
```

6

```
20    Q.  Who did it?
21    A.  I don't know.
22        MR. HARPOOTLIAN:  Okay.  Okay.  I don't
23  have any other questions.
```

(**Exhibit B**, Icove deposition, p. 6)

"It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000), citing *DePaepe* at 720. As *DePaepe* holds, speculative expert testimony as to the motivations of a third party must be curtailed "lest apparently scientific testimony carry more weight with the jury than it deserves." *Id.* at 720. Here, Icove seeks to provide lengthy testimony establishing a variety of profit-based motives for Genesis to commit arson. Yet, despite this testimony, Icove remains unconvinced of the probative value of his own findings. As a result, the grossly speculative nature of Icove's second opinion renders it inadmissible in view of this court's *Daubert* "gate-keeping function."

## CONCLUSION

For the reasons stated herein, the motion in limine should be granted and the Defendant should be prohibited from introducing expert testimony of David Icove as to the alleged "motives" of the Genesis plaintiffs or any "red flags" contributing thereto.

Respectfully submitted,

s/Richard A. Harpootlian
Richard A. Harpootlian
Federal Bar No.: 1730
Graham L. Newman
Federal Bar No.: 9746
RICHARD A. HARPOOTLIAN, P.A.
Post Office Box 1090
Columbia, South Carolina 29202
803-252-4848

                                  Facsimile: 803-252-4810
                                  rah@harpootlianlaw.com
                                  gln@harpootlianlaw.com

                                  ATTORNEYS FOR PLAINTIFF GENESIS PRESS, INC. AND GENESIS PUBLICATIONS LLC

March 30, 2010

8